IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GEORGE CUSTER, )
 )
           Plaintiff, )
 )
v. ) 1:25-CV-190
 )
DOVENMUEHLE MORTGAGE, )
INC. and SIMMONS BANK, )
 )
           Defendants. )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

According to the complaint, the plaintiff had a mortgage on his home, defendant Simmons Bank was the servicer of the loan, and defendant Dovemuehle Mortgage Inc. was the subservicer on that mortgage loan. Mr. Custer contends that the defendants violated various state and federal laws in dealing with him about his loan. Simmons Bank and Dovenmuehle Mortgage ("DMI") each move to dismiss. The defendants' motions to dismiss will be granted in part and denied in part, for the reasons that follow.

I. **Personal Jurisdiction**

When challenged, "the plaintiff bears the burden of demonstrating personal jurisdiction at every stage" of the litigation. *See dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 131 (4th Cir. 2023) (cleaned up). When considering whether this burden is met at the motion to dismiss stage, courts must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable

inferences for the existence of jurisdiction." *UMG Recordings v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (cleaned up).

Mr. Custer alleges that he entered into a loan agreement with a third party for a mortgage on real property; that Simmons Bank is a mortgage loan servicing corporation with its principal place of business in a state other than North Carolina but that does business in North Carolina; that "the servicing rights for [his] loan were transferred to" Simmons; that at all relevant times, Simmons retained defendant DMI to serve as the subservicer of the his loan; that DMI was Simmons' agent and Simmons was thus responsible for DMI's actions; that Simmons deliberately engaged in long-term business activities in North Carolina by servicing mortgage loans, including his mortgage loan; that Simmons had extensive communications with him in North Carolina about the loan; that Simmons directly collected payments, fees, and commissions from him in North Carolina; and that Simmons had contractual duties to him. Doc. 16 at ¶¶ 4–14.

Simmons has produced evidence that it does not do business generally in North Carolina, and it denies that it had any in-person contact with Mr. Custer in North Carolina. Doc. 11-1 at ¶¶ 16, 18. But it acknowledges that it acquired his loan several years ago and that it used DMI to subservice his loan. *Id.* at ¶¶ 13, 15. It has not denied at this point that DMI was acting as its agent, that it had communications with Mr. Custer in North Carolina concerning the loan, or that it collected money from him in North Carolina. *See generally id.*

At this stage of the proceedings, construing the pleadings and evidence in the light most favorable to Mr. Custer and considering the relevant factors, *Khashoggi v. NSO*

*Grp. Techs. Ltd.*, 138 F.4th 152, 158–59 (4th Cir. 2025); *Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 278–79 (4th Cir. 2009), he has made a facial showing of specific jurisdiction.  Simmons admits it services his loan secured by real property in North Carolina and has done so for several years.  From the context of the amended complaint and Simmons' evidence, the loan is memorialized in a contract with Mr. Custer, a North Carolina resident, and Simmons acts on behalf of another party to that contract to protect a mortgage on real property in North Carolina.  Doc. 20 at 6, 9.  Mr. Custer's claims arise out of how Simmons and its alleged agent dealt with him during the course of servicing his loan – that is, during the course of the contract.  Simmons does not deny that the Mr. Custer's performance under that contract – payment – occurred in North Carolina.  *Id*. at 11.  Simmons has not shown that litigating in North Carolina is burdensome, and the Court here can conveniently and efficiently resolve the dispute.  *See*, *dmarcian, Inc.*, 60 F.4th at 135.  North Carolina has a strong interest in seeing that creditors of its residents and agents of those creditors comply with state laws.  *Id.*

Subject to further evidence, the exercise of personal jurisdiction over Simmons, a nonresident defendant, is constitutionally reasonable.  Jurisdiction is authorized by both the long-arm statute of the forum state, North Carolina, and the Due Process Clause of the Fourteenth Amendment.  Simmons' motion to dismiss based on lack of personal jurisdiction will be denied.

## II.   Rule 8 Motion

In the alternative, Simmons moves to dismiss the complaint under Fed. R. Civ. P. 8.  Doc. 20 at 13–14.  Under Rule 8(a)(2), a complaint must set forth "a short and plain

3

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

While the complaint is not a model of clarity, Mr. Custer has not lumped the defendants together in a way that violates Rule 8. He included detailed factual allegations that, for the most part, specify which defendant did a particular action. Doc. 16 at ¶¶ 13–105. In each cause of action, he is reasonably clear, and when he refers to "the defendants," such references make sense in context. For example, Count I refers only to defendant DMI, so all references in that count to "the defendant" are fairly read to mean only DMI. *Id*. at ¶¶ 106–19. In Count II, he refers to "the defendants," and this cause of action seems directed against both Simmons and DMI. *Id*. at ¶¶ 120–36. So it is logical that in the causes of action the plural refers to both defendants and the singular refers to the defendant mentioned earlier in that Count.

The cases cited by Simmons involve egregious shotgun pleadings with vague factual allegations and grouped facts. Doc. 20 at 14. That is not the case here. The complaint puts Simmons on notice of the actions alleged against it. Simmons' motion to dismiss based on violations of Rule 8 will be denied.

**III.    Claim Splitting**

In April 2024, Mr. Custer filed a putative class action against DMI alleging that DMI's charge for making a mortgage payment by phone is illegal under North Carolina law. *Custer v. DMI*, No. 24-CV-306, Doc. 1 at ¶¶ 1, 2, 80, 86 ("*Custer I*"). Mr. Custer

filed this lawsuit against DMI and Simmons in March 2025. Doc. 1 ("*Custer II*").[1] DMI moves to dismiss Mr. Custer's complaint here under Fed. R. Civ. P. 12(b)(6), contending that his claims are barred by the doctrine of claim splitting. Doc. 30 at 9–14.

"The rule against claim splitting 'prohibits a plaintiff from prosecuting [his] case piecemeal and requires that all claims arising out of a single wrong be presented in one action.'" *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (quoting *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x. 256, 265 (4th Cir. 2008)). "In a claim splitting case, the second suit will be barred if the claim involves the same parties and arises out of the same transaction or series of transactions as the first claim." *Sensormatic*, 273 F. App'x at 265 (cleaned up).

Mr. Custer's present case does not constitute impermissible claim splitting. The lawsuits deal with different transactions and different facts.

*Custer I* is very specifically and only about DMI's pay-by-phone fee as it was applied to one of his loan payments and as it is applied to all persons who make mortgage payments to DMI. *Custer I*, Doc. 1 at ¶¶ 1, 80, 86. *Custer II* does not address the pay-by-phone fee, and it is not a putative class action. Instead, it stems from how DMI and Simmons dealt specifically with him as he applied for a loan modification. Here, Mr. Custer asserts that DMI's loss mitigation fees violate state laws directed to mortgage servicers, *Custer II*, Doc. 16 at ¶¶ 107, 116–17, and that DMI and Simmons violated a federal statute controlling mortgage loans and real estate settlement services in multiple

---

[1] In this claim-splitting section, the Court will refer to the cases as *Custer I* and *Custer II* to compare them. In the rest of the opinion, the document citations refer to the present case.

5

ways related to loss mitigation and loan procedures, *id.* at ¶¶ 125–36, violated a state statute governing debt collection through their practices in dealing with his loan, *id.* at ¶ 142, committed unfair trade practices in dealing with his loan, *id.* at ¶ 145, and engaged in a joint venture. *Id*. at ¶ 162.

DMI highlights the letter Mr. Custer's attorney sent DMI before filing *Custer I* to establish claim-splitting. *Custer II*, Doc. 30 at 12. But plaintiffs are not required to bring all claims mentioned in a pre-suit letter in one lawsuit, if the lawsuits deal with different nuclei of facts. DMI also highlights that this lawsuit, like *Custer I*, was initially filed as a putative class action. *See Custer II*, Doc. 1 at ¶¶ 101–13. But it is not clear why that makes a difference, since Mr. Custer is no longer seeking to proceed on behalf of a class here. *See Custer II*, Doc. 16 (First Amended Complaint, with no class allegations).

The Court recognizes that both lawsuits allege that DMI, the subservicer of Mr. Custer's mortgage, violated various laws in dealing with him about his property loan during at least a partially overlapping time period. *See Custer I*, Doc. 1 at ¶ 52; *Custer II*, Doc. 16 at ¶¶ 76–86. And the addition of Simmons Bank as a defendant "does not cut against dismissal for claim splitting." *See Rousseau v. Howard Cnty.*, No. 9-CV-1079, 2009 WL 4018551, at *3 (D. Md. Nov. 19, 2009). But given the very different facts underlying the two lawsuits, Mr. Custer has not engaged in impermissible claim splitting by filing this case. DMI's motion to dismiss based on claim splitting will be denied.

IV. **Rule 12(b)(6) Motion**

When evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a district court assumes the truth of allegations in the

complaint and draws all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### A. N.C. Debt Collection Act (Counts I & III)[2]

The North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. §§ 75-50 to 75-56, broadly regulates debt collection practices. It prohibits debt collectors from using threats and coercion, § 75-51, harassment, § 75-52, unreasonable publication, § 75-53, deceptive representation, § 75-54, or unconscionable means, § 75-55, to collect a debt. *See Ross v. F.D.I.C.*, 625 F.3d 808, 817 (4th Cir. 2010).

"All NCDCA claims require: (1) a consumer; (2) that owes a debt; (3) to a debt collector." *Onnipauper LLC v. Dunston*, 290 N.C. App. 486, 490, 892 S.E.2d 487, 491 (2023). The plaintiff must then establish the three general requirements for a Chapter 75 claim: "(1) an unfair act (2) in or affecting commerce (3) proximately causing injury." *Ross*, 625 F.3d at 817 (quoting *Davis Lake Cmty. Ass'n v. Feldmann*, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000)); *see* N.C. Gen. Stat. § 75-1.1.

Mr. Custer has pled the initial requirements of an NCDCA claim. He alleges that he owns property secured by a mortgage, Doc. 16 at ¶ 13, that he owes a debt because he

---

[2] In a footnote, Simmons states that it does not move to dismiss Count III, the NCDCA Count, under 12(b)(6). Doc. 20 at 15 n.4. But then it goes on to make an argument that Mr. Custer has not stated a claim under the NCDCA. *Id*. at 16–17.

is obligated to make monthly payments on the mortgage, *id*. at ¶ 59, that Simmons Bank is the servicer and DMI is the sub servicer of the mortgage, *id*. at ¶¶ 4–5, 14, and that he makes payments on the mortgage to DMI and Simmons Bank. *Id*. at ¶ 102. This is sufficient to plausibly allege that he is a consumer who owes a debt to a debt collector. *Onnipauper*, 290 N.C. App. at 490.

To fill out his NCDCA claim, Mr. Custer alleges four different unfair trade practices under Chapter 75. Each will be addressed in turn.

### 1. Loss Mitigation Fees (Count I)

Mr. Custer asserts that DMI committed an unfair trade practice when it charged him for "Loss Mitigation Attorney Fees" without clearly and conspicuously explaining what those fees are. Doc. 16 at ¶¶ 106–19. He points out that the North Carolina Mortgage Debt Collection and Servicing Act ("MDCSA"), N.C. Gen. Stat. §§ 45-90 to 45-95, requires that any fee incurred by a servicer be "[e]xplained clearly and conspicuously in a statement mailed to the borrower at the borrower's last known address within 30 days after assessing the fee." N.C. Gen. Stat. § 45-91(1)(b). He also alleges that DMI incurred most of those attorneys' fees more than thirty days before passing those fees onto him, which he points out also violates the MDCSA. *Id.* He notes that the servicer waives the fee if it does not comply with the explanatory and timeliness requirements in the MDCSA. *Id.* § 45-91(3). He also alleges that he suffered economic losses and emotional distress because of DMI's unfair acts. Doc. 16 at ¶ 118. These

allegations of statutory violations of the MDCSA, harm,[3] and proximate case are sufficient at this stage to meet the Chapter 75 component of a NCDCA claim.

DMI contends that it complied with the requirements in § 45-91. But those factual arguments are more appropriately addressed on a better developed record. It also contends that Mr. Custer did not allege compliance with the statute's notice requirement, *see* N.C. Gen. Stat. § 45-94, and while that is technically so, it is obvious from DMI's own brief, which details the pre-suit letter, that Mr. Custer actually did comply. Doc. 30 at 12; *see Collins v. First Fin. Servs., Inc.*, No. 14-CV-288, 2016 WL 589688, at *18 (E.D.N.C. Feb. 10, 2016) (finding the same argument without merit where a pre-suit letter was sent). Assuming such an allegation is required to state a claim, requiring an amended complaint to correct this potential technical defect in the operative complaint would be a waste of time.

Mr. Custer has stated a claim for violation of the NCDCA under Count I about loss mitigation fees. DMI's motion to dismiss this claim will be denied. The Court does not construe Count I to assert a claim against Simmons, so the motion to dismiss by Simmons as to this count is denied as unnecessary.

### 2. Direct Communication with Mr. Custer Despite Attorney Representation (Count III (a))

Debt collectors cannot collect or attempt to collect debt by "[c]ommunicating with a consumer (other than a statement of account used in the normal course of business)

---

[3] "Non-economic harm, such as emotional distress, can be cognizable injuries under the NCDCA." *Suarez v. Camden Prop. Tr.*, No. 18-CV-455, 2019 WL 3423427, at *5 (E.D.N.C. July 29, 2019) (citing *Ross*, 625 F.3d at 818).

whenever the debt collector has been notified by the consumer's attorney that he represents said consumer." N.C. Gen. Stat. § 75-55(3). Mr. Custer alleges that the defendants continued communicating with him directly after they were notified that he was represented by an attorney. Doc. 16 at ¶¶ 140–41. While he mentions that the defendants received a letter from his attorney stating he was represented, *id*. at ¶ 140, he does not provide the date of that letter or identify even one specific communication from either defendant that occurred after the letter. *Id*. at ¶¶ 105, 140-41. It remains unclear whether such a communication occurred and, if it did, whether it met the "normal course of business" exception.

While Mr. Custer need not prove his claim in the complaint, he does have to allege enough facts to make a claim plausible. For this claim, he has not done so. Mr. Custer has not stated a claim for violation of the NCDCA under Count III(a) about direct communication while represented. The defendants' motions to dismiss this claim will be granted.

### 3. Falsely Representing the Character, Extent, or Amount of a Debt Against Him (Count III (b))

Debt collectors are prohibited from "falsely representing the character, extent, or amount of a debt against a consumer." N.C. Gen. Stat. § 75-54(4). Mr. Custer alleges that after he signed a loan modification agreement on July 28, 2023, setting a new monthly payment amount, Doc. 16 at ¶ 138, the defendants charged different amounts and misrepresented the actual amount owed. *Id*. at ¶ 139. He alleges that they falsely represented the character, extent, or amount of debt against him. *Id*. at ¶ 142(b). He

10

Case 1:25-cv-00190-CCE-LPA    Document 34    Filed 11/12/25    Page 10 of 16

alleges that a Simmons Bank representative confirmed he had been charged the incorrect monthly payment amount. *Id*. at ¶¶ 97-103. The complaint alleges an unfair act sufficient to survive the motion to dismiss stage. *See Forsyth Mem'l Hosp., Inc. v. Contreras*, 107 N.C. App. 611, 614, 421 S.E.2d 167, 169–70 (1992).

Simmons and DMI assert that Mr. Custer failed to include any specific allegation in support of his claim that the defendants falsely represented the character, extent, or amount of debt. Doc. 20 at 18–20; Doc. 30 at 21–22. But he alleged at least one example in his factual allegations. Doc. 16 at ¶ 102. Simmons contends that the one specific instance of an incorrect amount provided was corrected 17 days later and thus does not show "fraudulent, deceptive, or misleading representation." Doc. 20 at 20. This raises a factual issue beyond the allegations of the complaint and is thus inappropriate for resolution on the pleadings. DMI also asserts that Mr. Custer failed to allege how any purported unfair act proximately caused his alleged injury. Doc. 30 at 22. His emotional distress allegation is sufficient to show proximate cause at this stage. Doc. 16 at ¶ 143.

Mr. Custer has stated a claim for violation of the NCDCA under Count III(b) about false representation about a debt. The motions to dismiss this claim will be denied.

### 4. Threatening to Take an Action Not Permitted by Law, Including Foreclosure (Count III (c))

Debt collectors are prohibited from collecting or attempting to collect "any debt alleged to be due and owing from a consumer by means of any unfair threat, coercion, or attempt to coerce," including "[t]hreatening to take any action not permitted by law." N.C. Gen. Stat. § 75-51(8).

Mr. Custer alleges that "Defendants pursued foreclosure" and that the foreclosure process had started. Doc. 16 at ¶¶ 44, 67. But he has not alleged facts tending to show that a specific unfair threat of foreclosure occurred or any facts to indicate that foreclosure was "not permitted by law." The threat of foreclosure does not constitute an unfair or deceptive trade practice when permitted under a contract or law. *See Spitzer-Tremblay v. Wells Fargo Bank, N.A.*, 250 N.C. App. 508 (table), 793 S.E.2d 281 (table), 2016 WL 6695825, at **2 (Nov. 15, 2016). He has not stated a claim for violation of the NCDCA under Count III(c) about threatening action not permitted by law. The defendants' motions to dismiss this claim will be granted.

## B. Real Estate Settlement Procedures Act (Count II)

To state a claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601–17, a plaintiff must allege "(1) a failure to comply with a RESPA obligation and (2) actual damages sustained as a result of the failure to comply." *Houck v. NewRez LLC*, No. 24-1519, 2025 WL 987455, at *4 (D. Md. Apr. 2, 2025). The actual damages must arise "as a result of" the servicer's alleged violation. 12 U.S.C. § 2605(f)(1)(A).

DMI moves to dismiss Mr. Custer's RESPA claim for failure to sufficiently allege actual damages. Doc. 30 at 15. But Mr. Custer alleges that because of the non-compliance with specified RESPA obligations, he ended up owing more capitalized interest and that the violations related to timing caused him to face foreclosure, forcing him to take unfavorable loan modification terms that could have been avoided but for

defendants' RESPA violations. Doc. 16 at ¶¶ 61–62, 69, 120-36. This is sufficient to allege actual damages.

DMI's motion to dismiss this claim will be denied. Simmons does not move to dismiss Cout II, the RESPA count, under Rule 12(b)(6). Doc. 20 at 15 n.4.

### C. N.C. Unfair and Deceptive Trade Practices Act (Count IV)

The purpose of Chapter 75 is "to provide civil legal means to maintain ethical standards of dealings between persons engaged in business, and between persons engaged in business and the consuming public within this State, to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State." *Nobel v. Foxmoor Grp., LLC*, 380 N.C. 116, 119, 868 S.E.2d 30, 33 (2022) (cleaned up).

The plaintiff alleges that the defendants committed unfair trade practices, in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), by violating a provision of the MDCSA requiring a servicer to provide requested information and to respond to a dispute about a loan account, Doc. 16 at ¶ 145(a) (relying on N.C. Gen. Stat. § 45-93), as well as various provisions of the North Carolina S.A.F.E. Act. *Id.* at ¶¶ 145(b)-(e) (relying on identified subsections of N.C. Gen. Stat. § 53-244.110 and 53-244.11). As the defendants point out, to the extent these violations "pertains only to debt collection, the NCDCA provides a claimant's exclusive remedy." *Williams v. Pegasus Residential, LLC*, No. 18-CV-1030, 2019 WL 4305989, at *2 (M.D.N.C. Sept. 11, 2019) (cleaned up).

The NCDCA provides that "[t]he specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S.

13

75-1.1 in the area of commerce regulated by this Article." N.C. Gen. Stat. § 75-56(a). This exclusivity provision only applies if an act is "in the area of commerce regulated by this Article." *Id*.

Here, construing the complaint liberally, these alleged violations may not be "in the area of commerce regulated by" the NCDCA. That would be the case, for instance, if one or both of the defendants were not debt collectors, a fact neither DMI nor Simmons has yet admitted, or if the acts were unrelated to debt collection but only related to some other aspect of mortgage servicing. A more developed factual record will allow these claims to be better understood for a determination about whether the NCDCA provides the exclusive remedy.

But it is not clear that these alleged violations pertain only to debt collection. The statutory provisions cited by Mr. Custer on this claim relate to duties of mortgage servicers and entities licensed to engage in the mortgage business.

The defendants' motions to dismiss this claim will be denied.

### D. Common Law Negligence (Count V)

Simmons and DMI move to dismiss the common law negligence claim in Count V. Mr. Custer agrees to dismiss this claim. Doc. 24 at 1 n.1.

### E. Joint Venture (Count VI)

Both DMI and Simmons move to dismiss the Joint Venture claim in Count VI. Mr. Custer agrees to dismissal of this claim against DMI, Doc. 32 at 20–21, leaving only the joint venture claim against Simmons Bank for discussion.

14

To state a claim for joint venture, a plaintiff must allege both "(1) an agreement to engage in a single business venture with the joint sharing of profits;" and (2) that each party to the joint venture has "a right in some measure to direct the conduct of the other through a necessary fiduciary relationship." *Best Cartage, Inc. v. Stonewall Packaging, LLC*, 219 N.C. App. 429, 436, 727 S.E.2d 291, 298 (2012) (cleaned up); *see also Synovus Bank v. Coleman*, 887 F.Supp.2d 659, 670 (W.D.N.C. 2012). "The second element requires that the parties to the agreement stand in the relation of principal, as well as agent, as to one another." *Best Cartage, Inc.*, 219 N.C. App. at 436 (cleaned up); *see also Synovus*, 887 F.Supp.2d at 670 (stating that a joint venture requires an "equal right of control between the parties").

Mr. Custer fails to allege a joint venture under North Carolina law. He alleges generally that the defendants "shared in profits," combined their money," acted "in furtherance of a joint venture," and acted in a "principal-agency relationship." Doc. 16 at ¶¶ 157–62. But he does not allege any facts that support these conclusory assertions. Specifically, he fails to allege any facts to show the defendants agreed to "joint sharing of profits" or had a right to direct each other with equal control between them. *See Best Cartage*, 219 N.C. App. at 436.

Mr. Custer's joint venture claim will be dismissed for failure to state a claim.

It is **ORDERED** that:

1. The motions to dismiss filed by defendant Simmons Bank, Doc. 19, and defendant Dovenmuehle Mortgage, Inc., Doc. 29, are **GRANTED** in part as to

15

the claims asserted in Count III (a), Count III (c), Count V, and Count VI and are otherwise **DENIED**.

2. Specifically, the Court **DISMISSES** the claims in Count III (a) based on alleged direct communication with Mr. Custer despite attorney representation, in Count III (c) about threatening to take an action not permitted by law, in Count V about common law negligence, and Count VI about a joint venture.

3. The plaintiff's claims for the following may proceed:

    - Count I, an NCDCA claim about loss mitigation fees;

    - Count II, a RESPA claim about a loss mitigation application;

    - Count III (b), an NCDCA claim about false representation about a debt; and

    - Count IV, a UDTPA claim based on actions summarized in ¶ 145 of the operative complaint.

This the 12th day of November, 2025.

_____
UNITED STATES DISTRICT JUDGE